24-2025 Veltor Underground LLC v. U.S. Small Business Administration et al. Oral argument not to exceed 15 minutes per side. Supervisory Attorney Mr. Lawrence D. Rosenberg. We are introducing law student Stephanie Lockman Golden arguing for the Plaintiff Appellant. Good morning. May it please the Court, Lawrence Rosenberg. I'm here on behalf of Veltor Underground to introduce my recently former student Stephanie Golden who recently graduated from the West Virginia University College of Law. She's a member of our Supreme Court Litigation Clinic and she'll be presenting argument today. What's she doing? Not studying for the bar? She is studying for the bar, but she's doing this in between the study sessions. Oh boy, very grateful. All right, thank you, Mr. Rosenberg. Thank you, Your Honor. All right, Ms. Golden. Good morning. Good morning. May it please the Court, can I please reserve three minutes for rebuttal? Yes. Everyone likely remembers a small business that shut its doors during the pandemic. A favorite cafe, a family-run shop, a place that once felt permanent. An estimated 200,000, 1 in 10 small businesses permanently closed as a result of COVID-19. And that is precisely why Congress enacted the CARES Act to keep American workers employed by keeping small businesses open. This Court should reverse the District Court's grant of summary judgment to the SBA and order the District Court to enter summary judgment for Velter for two primary reasons. First, the plain text of the CARES Act entitles Velter to loan forgiveness. And second, granting Velter this forgiveness would not frustrate the purposes of the Act, but instead would uphold these very purposes. Here, the plain text of the statute is unambiguous. Velter may seek forgiveness for payroll costs, and payroll costs include payments to independent contractors. As the Supreme Court held in United States v. Ron Peer Enterprises, when determining the meaning of a statute, the inquiry always begins with the language of the statute itself. And when that language is plain, that is where the inquiry must end. As the Supreme Court held in Star Athletica LLC v. Varsity Brands, courts looking at the statutory text should begin by giving each word its ordinary, contemporary, and common meaning. Payroll costs for purposes of the CARES Act are defined in 15 U.S.C. section 636A-36A, Roman numeral 8, Roman numeral 1, and contains two subparts, A.A. and B.B., which are separated by the word and. Part A.A. defines these payroll costs with respect to employees, while B.B. defines payroll costs with respect to independent contractors. Can I ask you a question that kind of goes back to your cafe example? So I agree you have a coffee shop, and now the CARES Act is clearly covering the five employees of the coffee shop so they can keep their jobs. But let's say the coffee shop once every three weeks hires a window cleaner to clean the outside windows of the coffee shop. And the structure of the act just seems so clearly to be about keep the employees on the payroll for the owner of the cafe. But if you own the window cleaning business and you're an independent contractor, sole proprietorship, the way to protect your employees and your ongoing business is for you to take out a loan. So that's how this all works together. And if you don't take that approach, what ends up happening is the owner of the cafe can deduct the cleaning. I mean they can make that part of their, quote, payroll costs. But then the cleaning company, the window cleaning company, could take out its own loan. And that seems very strange to me. I mean I don't know how to get around that. And I mean we are supposed to make sense out of the statute. And that example seems to me to illustrate the challenge of your position. Two points to answer your question, Your Honor. First, at the time Veltzer applied for its PPP loan in 2020, according to the SBA's own Office of Advocacy in its annual small business report, 81% of small businesses in the United States were utilizing an identical non-employer business model of only paying independent contractors, as opposed to full-time employees. And as to the potential for double dipping that you're discussing, there are safeguards in place both at the application stage and during the forgiveness stage that would prevent any double dipping. For example, within the operative clause itself in subsection BB, the language compensation to or income of already prevents double dipping because a plain reading indicates that only the payee or the payor, but not both, get the funds. Further, Your Honor, at application stage, I guess I don't understand why it limits payee, payor. I guess I don't see that. Other than using the approach I suggested, which is independent contractors have to take out their own loan and owners of businesses who have employees take out their loan. I think paragraph G provides a bit of clarity on this. Paragraphs G and D work in unison at application as well to prevent double dipping. Specifically, paragraph G requires the eligible recipient to make a good faith certification that they do not have an application pending for a loan for the same purpose and duplicative of amounts of an existing covered loan. But the window cleaning business could honestly say that. It was the café owner that did the first loan. The window cleaner doesn't even know that they were part of the payroll cost. They're not committing fraud. They don't realize. They haven't called the café and said, hey, did you include our bill in your payroll cost? There's nothing that says they're supposed to do that. So that language doesn't seem to account for that point, that the window cleaning business just doesn't know what the café owner is doing. Also in the forgiveness stage, if they somehow did evade the safeguards at application, 636ML grants the administrator audit authority, which he or she can use to review and audit all of the covered loans, access any records. It also requires the recipient to maintain any necessary records for four years following application for forgiveness. But I guess what I'm trying to say is they do an audit. Your client, Velter, has these great lawyers who says the statute allows this. The audit wouldn't take the money back. Under your reading of the statute, the audit would have to allow the café to use the payroll cost and the window cleaning company to take out a similar loan. It wouldn't, Your Honor, because of paragraph G, because it prevents the duplicative amount of the loan. And then with the audit authority, the administrator is given authority to modify the amount of a loan or to reduce the amount of forgiveness. How would the auditor know whom to punish? So it's forgiveness time, and the café owner wants forgiveness for this payment. The window cleaning company wants forgiveness for this payment. Who gets the forgiveness? The small business owner would get the forgiveness. The window cleaning company? Is that what you mean? Or the café? The café, Your Honor. The café would receive the forgiveness. 636 M.E. 4 also permits the administrator to require an eligible recipient to proffer any documentation deemed necessary during the application and forgiveness process, which they could also use to request bank payments, showing payments from the café to the window cleaner's bank account. They could use it to request proof of checks given from the small business to the window cleaner, or they could even request a Form 1099 to approve the payments to the window cleaner. Well, I like it you're against double dipping. Good for you. I don't know how to make it work, but I agree with you on that point. I understand that we're talking about the statute and what it allows, and I guess the facts are of marginal importance, but are these independent contractors, are these people who reported to work every day? What was the nature of the relationship other than that they were independent contractors? Here specifically, Velter did a lot of utility work and worked with the independent contractors regularly. What's regularly mean? Frequently. It's a bare bones complaint. I mean, on this point, it's pretty bare bones on the record, isn't it? Yeah, it is, Your Honor. It is a bit bare bones on the record. They worked with them often. They worked with the independent contractors often. What were they actually doing? They were doing the utility work for Velter. Utility work being digging holes, lines? Yeah, lines. So did Velter have any employees? No, Your Honor. Velter falls squarely within the confines of subsection BB, only paid independent contractors. And were these independent contractors individuals or did they have employers? They were individuals, Your Honor. At this time, Velter would like to briefly discuss the textual arguments presented by the government. First, as to the disjunctive and, if this court adopts the government's interpretation by reading and in the disjunctive form, that means that small businesses who utilize both employees and independent contractors will be prevented from benefiting from the PPP loan program. And utilizing both employees and independent contractors is not an uncommon business model. And even if this court opts to read and in the disjunctive, it has no effect on this particular case because Velter . . . Why is that so bad? I mean let's just stick with the cafe example. So the cafe owner says to the window cleaner, I'm sorry, we can't hire you this month. I've got this loan, but I can only use it for employees. By the way, if you need some money, you can apply directly. And so, that would allow the relationship to continue. I think it's difficult and a bit impractical because under the government's reading, if the independent contractor, for example, has to apply separately . . . Well, they can still be paid. They can be paid, but then they wouldn't have to do the work to be paid. Or at least they wouldn't be getting the job from the small business itself. Well, they still want their windows cleaned. And I assume they're going to insist on being paid for cleaning the windows. So, I guess I'm not following that. I mean I get the point that the cafe can't pay them, or at least it's harder for them to pay them. I guess your point would be, it's very strange to ask the window cleaner to get a loan and then not do work. Is that the idea? Yes, Your Honor. I think also under the government's reading, it appears as though the small business owner would need to perform all of the jobs themselves. Or in this case, Veltzer would need to perform all of the jobs . . . The small business owner would need to perform all of the jobs on their own, as opposed to paying the independent contractors to do the job. I see my time has expired, Your Honor. Yes, thank you. You'll get your full rebuttal. Let's hear from the government. Thank you. Good morning. Good morning, Your Honors. Adam Jed on behalf of the United States. May it please the Court. I just want to jump right into the colloquies about, I guess, the hypothetical window cleaner. It seems like a good example to kind of unpack some of the key issues in this case. If you think of whether it's an independent contractor who kind of seems like an employee, is sitting at a desk working next to employees, you know, every day. Or you have something like a sole proprietor of a plumbing business that comes in just once a year to fix the broken boiler. The answer to the statutory question needs to be the same as between those two examples. And as I think Chief Judge Sutton's window cleaner example kind of helpfully unpacks, there are a number of statutory provisions that basically presuppose the government's interpretation of the term payroll costs and are in tremendous tension with the plaintiff's interpretation of the term payroll costs. I mean, just among other things, as a practical matter, our hypothetical cafe will not necessarily know when that window cleaner comes in every couple of weeks, whether it's a sole proprietor or independent contractor, because in contrast to employees, it doesn't necessarily need to track that. For a sole proprietor, it wouldn't at all. For an independent contractor, it would track it sometimes, but oftentimes it would not. So Chief Judge Sutton, in addition, of course, to the double-dipping problem that Your Honor was discussing with my friend, you do also just run into some of the basic statutory asymmetries that if the window cleaner were not a U.S. resident, they would still be eligible to be counted, whereas if an employee were not a U.S. resident, they would not be eligible to be counted. But what if – Ms. Golden just made a point, though, I hadn't appreciated, which – why would the window cleaner come? So in other words, the cafe owner only is getting a loan for the employees, the barista, et cetera. They do want their windows cleaned. They call the window cleaner, and the window cleaner is doing just fine. They got their loan. And they say, well, we'll come, but we'd like you to pay us. Why would – are they going to pay them? So I think there are two answers to that question. I mean, number one is remember when just contextually when the statute was passed in March 2020, there was basically just like a total shutdown of the U.S. economy. So I think at least sort of at the moment that that statute was being written and understood, the kind of premise of all of this is basically everyone's staying home and no one is working. The other answer to your question is I guess it's kind of a second-best argument, which is there could hypothetically be circumstances where you ended up with maybe an independent contractor that gets its own loan and maybe somehow someone is still operating and is offering to pay them, and maybe in that kind of hypothetical scenario you could get like a bit of a double count. But conversely, I think the plaintiff's position basically has a kind of permanent double count. It means like more or less every independent contractor or sole proprietor is eligible to get a loan and loan forgiveness for the very same payments that the small business that is making those payments can also lay claim to. But the statute doesn't contemplate double payments for the same thing. So that's the safeguard, it seems to me. I mean, I agree that the statute has to mean the same thing for everybody, but there's a certain reality out there, and some independent contractors are window washers that have 100 customers, and some are individuals who, for whatever reason, work as independent contractors and they're not employees. Maybe they have three places they go on a regular basis or something, or maybe just one. So the act on their reading would permit that person to be covered by their place of employment where they go every day, and the safeguard against that person double dipping is just when they put in the information in the system for who they paid under the 1099, it'll catch the duplicates. Well, Judge White, I mean, first of all, obviously the statutory question needs to be the same, kind of regardless of the specific facts on the ground. So whether it's an independent contractor who seems kind of employee-like or the person who comes in once a year to fix the broken boiler, the statute needs to operate in the same way. I agree, but the point is it will operate the same way, but in the sense of what's permitted. But in the field, people will make choices, and you'll have some independent contractors who get their own loan and some who don't, and they rely on the place where they go on a regular basis for them to do it. Judge White, I mean, in candor, I think that's just a description of a different statute. I don't understand anything in the statute to kind of address the double counting problem. What about the – she quoted a provision. Just tell us how that operates, or did you know what she was referring to? I'm not sure if I totally understood the provision that she was referring to. There have been a couple of other – there's a passing reference in the plaintiff's opening brief, and maybe this is it. It's actually a reference to an argument that was made in district court, and they haven't renewed here. But they make some reference. Maybe this is what she was talking about, to 1099s maybe somehow capturing something, so there would be a record of one or another, if that's the argument that my friend was making. Obviously, 1099s never get issued for sole proprietors. 1099s only get issued for some independent contractors, so it just couldn't – Your position is there isn't a way – the statute either allows double dipping, in which case go forward and forgive the loans, or it doesn't, but there's no protection to it. I think my answer is yes, but I do just want to put an asterisk on that answer. Yeah, please. So I don't understand anything in the statutory text to forbid that, and I think when the plaintiffs – and this is what they argue in their brief. They lean on the word or. I think that's, first of all, just presupposing their definition of the term compensation, and that's like a lot of work to be done by the word or. I, of course, do need to – just in complete candor with the court, I do need to leave open the theoretical possibility that SBA would have had the legal authority to have addressed the question by regulation. Obviously, the plaintiffs have made some arguments in this case, but not in this appeal about SBA's limited legal authority. But then you just get into all of the practical questions that we raise in our brief, which is even if it were legally possible to promulgate a regulation, just as an initial matter, it would be shocking if Congress had an issue. Who would lose in the hypothetical where the window cleaner takes out a loan and allows them to keep cleaning, the cafe owner takes a loan and part of the payroll costs is the window cleaner? There's a regulation that says no double dipping. Who wins? Who gets their loan forgiven? We have no idea who would win, and obviously the silence on the issue in the statute, I just think, kind of underscores SBA's— Maybe I don't understand, but when you submit the paperwork, which you do have to do that, right? There are kind of two stages of, I guess, paperwork submission, when someone applies for a loan and then there's also— No, no, no. After, when you— Apply for loan forgiveness, yes, Your Honor. So you submit the paperwork and it shows that you have some employees, your W-2s, and here are my 1099s for the independent contractors that I paid out of this money. If one of those independent contractors took out their own loan, won't the system tell you, tell the government, that, oh, we have double dipping here? Well, again, even if that were possible as a factual matter, and it's not, and I'll explain in a moment why it wouldn't be, just as a legal matter, if that depends on 1099s, then it means it doesn't address sole proprietors at all, even though the plaintiff's argument is about both sole proprietors and independent contractors, because you don't have to issue a 1099 for sole proprietors ever. And for independent contractors, it only addresses the subset of independent contractors for whom you would be issuing a 1099. That depends on, we cite the relevant IRS statute and regulation in our brief. It depends on the kind of work, the amount of money that they're making, kind of things like that. Now, as a factual matter, and Judge White, maybe this is the thrust of Your Honor's question, the loan forgiveness application is initially submitted to the private lender who made the loan. Ultimately, Your Honor's right, it does end up with SBA. So I think for this mechanism to operate, it would mean that SBA, again, solely for a subset of independent contractors, would have to set up, I guess, some kind of a database where it would be kind of tracking not just who got loans, but also whose payments were the basis for the loan. So they would need to know, for example, for our cafe, they would need a list of every employee and independent contractor who that cafe had looked to. Then they would obviously, of course, also need to know every independent contractor who had gotten their own loan. It would be a massive undertaking, and certainly the statute doesn't contemplate. And then at that point, obviously this goes back to Chief Judge Sutton's question, you would then need an answer to who wins out, certainly something the statute doesn't address. I think I understood my friend at the podium to be saying the small business would win out. But I didn't understand why that would be the answer. And again, Judge White, even if sort of all of that were possible on the back end, you still get all the front end problems that ordinarily, when someone is applying for a loan, they don't know if the person who comes to clean their window is a sole proprietor or an independent contractor or works for some other 500-person business. This is, I think, coming from Judge White's direction, another way of getting at it. What's not part of payroll costs? Let's say you're right about independent contractors and sole proprietors. And go back to the cafe. Everything else is covered, right? Utility bills, the rent. Am I right? Am I right that the program covered everything else, one way or another? Partially, but not entirely. So first of all, obviously. Is your answer that, well, those aren't payroll costs? They're just covered by something else? Well, one, of course, those aren't payroll costs. So a business's kind of maximum loan amount is just tied to payroll costs. That's it. It's just a formula that is based on payroll costs. It has nothing to do with rent or mortgage or kind of anything else along those lines. When it's time for loan forgiveness, obviously there are reductions, as we point out, if you cut the number of employees, not, for example, if you cut the number of independent contractors. But then when you're looking at effectively whether you used the PPP loan on permissible purposes, and Judge Sutton, I think this is what Your Honor is referring to, then there are various categories of expenses that you can look to. One is payroll costs, but the other aren't all business expenses. Mortgage and rent are covered. There's a certain term. It says something like business expenses, but if you kind of dig down into the definition, it's actually like certain technology-related business expenses. So it's not that kind of – Is there a way in which independent contractor costs would be covered at that stage? I don't believe so, Your Honor. Okay, so then that's why I'm – The question is how odd that they're excluded. They can be quite important, just as important as utilities, rent. Well, there are plenty of other business expenses that are not included. That's what I'm looking for. What are the others that would never be accounted for at all? Yeah, so my understanding, and I just want to sort of say up front, because obviously the plaintiffs haven't made this argument, I haven't sort of dug too deeply into the kind of definitions of the terms in that provision, but sort of speaking off the cuff, my understanding is it's like rent, mortgage, certain kinds of like technology business expenses. I think – and again, I'm just attaching the asterisk because I have not dug in to confirm this – but I think that what the cafe may spend on coffee or perhaps what the cafe may spend on window cleaning services, whether it's from an independent contractor or a large window cleaning company, that those would not be covered by that. So they don't – I was trying to figure out if they stood alone because that was going to bother me. They don't stand alone. Independent contractor and sole proprietor. As far as I know, they do not stand alone. And, I mean, look, obviously Chief Judge Sutton, if we thought there needed to be some parity between the business expense of paying a window cleaner and the business expense of mortgage or something like that, then we would find that in the business expenses category. It would not be built into payroll costs, and certainly not when the maximum loan amount and the sort of reductions in loan forgiveness and the foreign person exclusion are all tethered to employees but not to sole proprietors and independent contractors. What other courts have this? I know there's a Fifth Circuit case that's been pending for a while. What other courts are wrestling with this? So I'm certainly most knowledgeable about what's pending in courts of appeals. I know that – my understanding is the government has won this in a number of district courts. In one, which was in the Fifth Circuit, there is a pending appeal, which is under submission to the Fifth Circuit. To the best of my knowledge, the government has only lost this in one district court, and the government has an appeal that is in the process of being briefed in the Third Circuit. And there are no other pending appeals to your knowledge? To my knowledge, that's it, and I would very likely know. How lucky you are. How often does this come up in the rest of your life? Well, I confess I was not eligible for a PPP loan, but an interesting statutory question is always an interesting statutory question. Well, I mean, just one other way to come back and try to put the best take on their position is why all these economies are collapsing. These are looking, piercing all the corporate forum stuff. These are people. They're workers. This is a worker protection program, and payroll costs are just identifying two sets of workers. I mean, to me, that's their best argument. So that is symmetric. I realize words like compensation and then the foreign worker, the double dipping cut against it. But, you know, Occam's razor, you might say they have the better Occam's razor argument. You know, Judge Sutton, I mean, certainly I could imagine Congress having designed a statute like that. And, you know, I should say, obviously, in law generally, like sole proprietors and certainly independent contractors are treated differently than employees, so it's not surprising that Congress didn't design that statute. But if they were to have gone about designing a statute that I think Your Honor was referring to, it would look quite different because presumably at that point, employees would be parallel with sole proprietors and independent contractors. And I don't just mean for the foreign exclusion and the documentation requirements and the reductions, although you would expect that as well. But presumably then you would also not have independent contractors and sole proprietors separately be eligible to go get their own loans. I mean, that's basically a decision that if you're self-employed, as a self-employed person, you will be eligible for a loan and you will be taking care of yourself. If you are an employer, then the employer will be eligible for a loan and that loan will be forgiven, basically to the extent that they then continue to employ their employees until they then apply for loan forgiveness. That's why we basically have two kinds of payroll costs. It's effectively employment payroll costs, self-employment payroll costs. That, you know, kind of largely mirrors the sorts of categories of eligible recipients. And then obviously we have so many other provisions like the foreign exclusion and the reduction and the documentation requirement that all kind of presuppose our interpretation. Unless the court has any other questions. I don't think so, but thank you so much for answering our questions. Thank you, Your Honor. We appreciate it. Okay, Ms. Golden, you've got, I think, three minutes of rebuttal. Just a few brief points on rebuttal, Your Honors. First, the government's reading results in non-employer businesses, those with no full-time employees, like Velter, shutting down and becoming a statistic. The district court itself agreed that the operative clause is unambiguous. And as previously mentioned, 81% of small businesses in 2020 utilize an identical non-employer business model. And if this purpose of the CARES Act is truly to keep American workers paid and employed and to assist small businesses nationwide adversely impacted by COVID-19, then the government's reading simply doesn't make sense. My friend on the other side admitted that there are problems on both sides, so the plain language controls. The double-dipping issue is manufactured by the government's motivated reading of the text, specifically to refer back to the provisions I cited. Paragraph G states, an eligible recipient applying for a covered loan shall make a good faith certification that the eligible recipient does not have an application pending for a loan under this subsection for the same purpose and duplicative of amounts applied for or received under a covered loan. In the example of the window cleaner, they don't. There's no other loan. They're seeking a loan to keep their business afloat. They don't know what the cafe owner is doing. I guess I'm struggling with how, I mean, I'm going to go back and look at G, but I'm not sure I'm seeing it. What's the word I'm missing? Why would the window cleaner know that they're just seeking their own loan? It allows independent contractors to get loans. The loans would be being used for different purposes then, because if the independent contractor acquires their loan, and if they have people working beneath them, such as subcontractors, they're using their loan funds to pay them. The small business owner is using their loan to pay the independent contractor, the window cleaner. Independent contractors and sole proprietors tend to pay themselves. They pay themselves out of the loan, and then they would get paid by the cafe owner from the proceeds of their loan. And I don't understand why G prohibits that. Under G, the first applicant gets the forgiveness. In this case, VELTR, not the independent contractors hired by VELTR, would receive the forgiveness, and the administrator can use paragraph D to figure out who is who and who applied first. And finally, Your Honor, to your point during my friend's argument, there is a specific exclusion provision here, which is right underneath the operative clause in paragraph A. And that does not include independent contractors. Despite Congress going in and amending several times, independent contractors were never added to that list. And I see that my time has expired. Sorry, to which list? There is a list of exclusions. It's paragraph A, Roman numeral II. For the foregoing reasons, this court should order the district court to enter summary judgment for VELTR. Thank you, Your Honors. Thank you very much. Thanks to both of you. Mr. Jed, thank you for your excellent brief and answering our questions. We're grateful to have your expertise in this really tricky case. And Ms. Golden, in 20 years, you're going to look back and go, what the heck was I doing arguing this incredibly complicated case? I can't imagine doing this after I'd graduated from law school. So congrats to you. You should study hard for the bar, but I don't think you're going to have trouble with it given how smart you are. And Mr. Rosenberg, thank you for your guiding hand. We really appreciate it. The briefs were absolutely excellent. So thank you to everybody. The case will be submitted.